## COOPER v. PORTER.

(Court of Appeals of District of Columbia. Submitted March 13, 1923. Decided May 7, 1923.)

### No. 1574.

Patents �finders=91(4)—Evidence held to show installation constituted reduction to practice.

Evidence in interference proceedings *held* to show that an installation made by the junior party before the earliest date to which the senior party was entitled included a pump, as required by the counts in issue, so as to establish reduction to practice on the date of the installation.

Appeal from the Commissioner of Patents.

Interference proceeding between Waldren H. Cooper and Hollis P. Porter. From a decision awarding priority to Porter, the senior party, Cooper appeals. Reversed, and priority awarded to Cooper.

A. P. Greeley, of Washington, D. C., and A. E. Young, of Pittsburgh, Pa., for appellant.

John F. Heine, of Elizabeth City, N. J., and W. W. Burns, of Washington, D. C., for appellee.

Before SMYTH, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appeal from a decision of an Assistant Commissioner of Patents in an interference proceeding, overruling the

⚓For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

decisions of the Examiner of Interferences and the Board of Examiners in Chief and awarding priority of invention to Porter.

The issue is expressed in ten counts, of which the first, here reproduced, is illustrative:

"1. The combination of an oil well pump, a suction line serving to conduct a flow of oil and gas therefrom, and means associated with said line for separating the oil from the gas, said line operative as a pressure reduction means for said pump."

The point upon which the decision turns is whether there was present an oil well pump in the apparatus installed and used by Cooper at the E. S. Fisher farm well No. 3.

Porter, the senior party, took no testimony, and therefore is restricted to his filing date.

Oil well pumps being old, the drawings of neither application specifically disclosed this element, but the claims originated with Cooper. Prior to this invention, the oil was pumped into an open tank, which allowed the escape of gases. The object of the invention is to conserve these gases, and this is accomplished by pumping the oil into a closed tank connected to the usual line extending from the casing head to a vacuum pump, thereby putting the tank and the line carrying the oil to the tank under the same vacuum existing in the casing. Under this construction, the vacuum pump will draw the gases and vapors of volatile hydrocarbons from the tank so that the gasoline content may be extracted by old methods. That Cooper had a complete conception of the invention when the apparatus at the Fisher farm was installed is clearly apparent, we think, from the evidence. This installation undoubtedly was made as a test of the invention. Cooper in his testimony said:

"There was a pipe or lead line from the well which was connected from the tubing to the top of this tank, *and it pumped the oil;* water and whatever gas came with the oil went into that separating tank, and it was so arranged that the oil dripped from this pipe in the top of the tank to the bottom. There was a hole in the top of the tank, and the pipe connected that to the suction line between the plant and the casing head. That made the same vacuum on the tank that there was at the plant, and made the same vacuum on the tubing that there was in the casing. Then the question was to get *the oil that was pumped into the tank* from the well into a line that runs to the flow tank and not destroy the vacuum." (Italics ours.)

This and other testimony to the same effect was fully corroborated, and, as found by the lower tribunals, this and the evidence as to other elements necessary only in the use of a pump, clearly indicates that the pump was used. As stated by the Examiners in Chief:

"Incidentally the use of stuffing box and sucker at top of the well tubing show a pump to the same extent as is disclosed by Porter's application as a basis for copying the claims from Cooper's patent. If the pump barrel and plunger were not present, there would be no apparent reason for the use of a stuffing box and sucker rod and a cap would probably have been substituted as more efficient, and there would, furthermore, be no necessity even for the tubing. * * * It is admitted or is obvious that tubings or casings having pump barrels and plungers or valves operated by sucker rods, etc., are well known in the art, and that they are operated by the difference in pressure produced beneath the plunger on the upward stroke relative to the atmospheric pressure on the oil or water surface outside the casings. No test of the oper-

ation of such a pump is required, nor do we think it is essential to test the operation of a pump that differs by the creation of less pressure or suction above the pump plunger, which suction obviously assists in raising the oil. The operation is obvious."

In view of the positive testimony concerning this particular installation, the object of the test, and the considerable period of time covered by it, and the fact that the pump element was old, we rule that the lower tribunals were right in concluding that this installation constituted a reduction to practice of the invention. We are unable to agree with the Assistant Commissioner that the pumping, which he finds took place, "may have been effected by suction rather than by a pump in the well." We think such a conclusion inconsistent with the evidence and surrounding circumstances, as fully demonstrated by the lower tribunals.

The decision is reversed and priority awarded Cooper.

Reversed.